[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the plaintiff Minerva Gullotta against the defendant Bernard Ostrout for assault and battery. The facts are as follows. The plaintiff who is 72 years of age lives at 52 Larrabee Street. The Defendant is 69 years old and is the plaintiff's brother-in-law. He lives at 34 Larrabee Street. The bungalow occupied by the plaintiff is located behind the 34 Larrabee home of plaintiff's sister Gloria Ostrout. The land on which both of these properties are located is owned by Gloria Ostrout. On this land parcel is also an apartment complex with adjacent parking stalls and a three-family house.
On the morning of February 25, 1989, at about 10 a.m., the defendant was in the area of the parking stalls shoveling snow. A brick path ran alongside that side of plaintiff's bungalow facing these parking stalls. Defendant's shoveling eventually took him to the immediate vicinity of this brick path onto which he deposited snow being removed by him from the amesite area of the stalls.
Upon seeing the defendant shovel snow onto her brick walk, the plaintiff came out from her side door and told the defendant he was too close to her house. She then came out dressed in a heavy overcoat wearing two knit wool hats and carrying a metal shovel. The plaintiff at this point began tossing the snow back onto the amesite.
While the plaintiff was bent over shoveling, the defendant, who was right next to her, put snow on top of her head. Whereupon the plaintiff tossed a shovel of snow at the defendant's waist and continued shoveling. This was followed by the plaintiff receiving a blow to the right side of her head over her right eye while she was bent over shoveling. Plaintiff thought she was going to be killed. She tried to wrestle the defendant. The defendant said nothing. The CT Page 2635 plaintiff told her she was going to call the cops. She went into her house and dialed 911. She told the operator she was assaulted with a snow shovel by a relative, a brother-in-law.
Shortly thereafter the paramedics came. Plaintiff felt sick, was hurting in her head and could not contain her crying. The paramedics took her blood pressure and wanted to call an ambulance. Plaintiff did not want to have them call an ambulance. She did not want to leave her dog and home at that point.
Later on that same day a friend drove the plaintiff to the Manchester Hospital where she was seen in the emergency room. Plaintiff was found to have swelling in the right temporal area and slight tenderness there as well X-rays were also taken and the results were negative. Plaintiff was at the hospital the better part of two hours. She was back home by 3:30 p.m. A neighbor stayed with her for a period of time.
On the following Monday the plaintiff contacted the office of Dr. Daniel Purcell in Manchester and was given an appointment for the week following. Dr. Purcell saw the plaintiff on March 7, 1989. He [Her] history given to Dr. Purcell by the plaintiff was that she was struck on the right side of the head with a snow shovel. When seen on March 7, 1989 plaintiff's chief complaint was of right-sided headaches and neck pain. Dr. Purcell found a hematoma on the right side of her head. Plaintiff showed no neurological deficit.
Plaintiff was seen again on March 21, 1989 by Dr. Purcell and had similar symptoms, headaches and neck stiffness. Dr. Purcell recommended cutting her original medication and ordered an EEG and a cranial C/T scan. The plaintiff was referred by Dr. Purcell to Robert Berland for a neurological opinion. The EEG done on March 23, 1989 was normal as was the cranial C/T scan done on the same day. Dr. Berland saw the plaintiff on April 11, 1989 at which time he found that the plaintiff had sustained an injury and had post-traumatic symptoms without signs of significant neurological dysfunction. The plaintiff was told by Dr. Berland that these symptoms would subside in time. No symptoms of major neurological abnormalities were noted by Dr. Berland.
When the plaintiff saw Dr. Purcell on March 7, 1989, she CT Page 2636 had on a neck collar. Dr. Purcell told her to remove it, that it was a comfort measure but not therapeutic. She, however, found it gave her some relief and continued to use it in her home. When the plaintiff was seen on March 21, 1989 Dr. Purcell told her to continue to use the collar as needed. At that time she was also told to use heat to the neck and to set her activities at whatever level she could tolerate.
The plaintiff continued to see Dr. Purcell on a number of occasions on through December 28, 1993. During this time Dr. Purcell found that she was diabetic for which he also treated her. No claim is made that this diabetic condition was in any way connected to the February 25, 1989 incident. In terms of her billed visits two or three of the plaintiff's visits included attention to the diabetic condition.
Dr. Purcell had not seen the plaintiff prior to March 7, 1989. The plaintiff herself had not seen a doctor in twenty years. There were therefore no prior medical records available to the doctors who attended the plaintiff as a result of the February 25th incident. Cervical spine X-rays which Dr. Purcell had taken in October of 1992 revealed for the first time the plaintiff's degenerative arthritis. Dr. Purcell in the course of his treatment of the plaintiff found limitations to the range of motion to her neck. No claim is made in the pleadings that the plaintiff sustained aggravation of a pre-existing injury or condition.
Though the defendant denies striking the plaintiff with his plastic shovel, the fact that the plaintiff and the defendant were the only persons present in the immediate vicinity where the incident occurred; the fact that the plaintiff did have a visible injury to her head which was confirmed by the paramedics who arrived within minutes of the happening; and the fact that the injury was not accounted for by anything else having happened to the plaintiff shortly before or after the incident, leads to the conclusion that the plaintiff was struck by the defendant's shovel wielded by the defendant with sufficient force to cause the plaintiff to sustain a lump on the side of her head but not of such force as to cause her to fall or to loose consciousness.
The plaintiff's claim in this case is an assault and battery upon her person by the defendant; and that such assault and battery was willful, wanton and malicious. "An CT Page 2637 assault has been defined as any attempt with force or violence to do corporal offense to another, coupled with the present apparent ability to complete the act." D. Wright, J. Fitzgerald and W. Ankerman, Connecticut Law of Torts (3rd Ed. 1991) 6 at 8. "A battery is a completed assault. Battery has been defined as any touching of the person of another in rudeness or anger." Id 9 at 10. For purposes of liability it does not matter how little or great that force was. "A wilful and malicious injury is one inflicted intentionally without just cause or excuse. It does not necessarily involve the ill will or malevolence shown in expressed malice." Rogers v. Deedley, 119 Conn. 532, 534 (1935). Nor does there have to be any preconceived intent on the part of the defendant to injure the plaintiff.
This court concludes from the facts found that the defendant did commit an assault and battery upon the person of the plaintiff. Even though there was no preconceived intent to do her injury, he did strike her in anger with his shovel and did inflict injury upon her. As a result of this the plaintiff suffered a bruise to her head which caused her to experience discomfort and pain in the area of her head and neck and which resulted in her experiencing recurrent headaches which still persist. This court finds that the assault and battery was a traumatic experience for the plaintiff who at the time was in her late 60's. She was frightened and visibly upset. This court further concludes that the plaintiff has not proven by a preponderance of the evidence that she was left with any permanent injury attributable to the February 25th incident.
Judgment may enter in favor of the plaintiff Minerva Gullotta against the defendant Bernard Ostrout in the amount of $1,217.00 economic damages and $8,500.00 non-economic damages for a total award of $9,717.00.
Mary R. Hennessey, Judge CT Page 2638
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 2639